COMMONWEALTH *vs.* DONALD B. JOHNSON.

Suffolk. September 11, 1979. — November 6, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Homicide. Robbery. Larceny. Practice, Criminal,* Instructions to jury.

At a trial of indictments for armed robbery and murder in the first degree in which the entire case was tried and turned on the question whether the victim attempted to rob the defendant of a bag of marihuana or the defendant attempted to rob the victim of money during a struggle leading to a fatal stab wound received by the victim, and the defendant attempted to characterize the victim as the knife-wielding attacker, but the judge's charge permitted the jury to return guilty verdicts or not guilty verdicts and they returned guilty verdicts on both indictments, the verdicts were mutually consistent and necessarily characterized the defendant as the robber; there was no error in the judge's failure to instruct the jury that a voluntary manslaughter verdict is warranted where excessive force is used in self-defense. [180-181]

At the trial of an indictment for armed robbery, there was no error in the judge's failure to instruct the jury on larceny as a lesser included offense where the evidence did not warrant a finding of larceny if the defendant was not guilty of armed robbery. [181-182]

At a criminal trial, there was no reversible error in the judge's reference in his charge to the function of appellate courts where the instruction did not have the "inescapable effect of reducing the jurors' appreciation of the significance of their deliberations and verdict." [182]

INDICTMENTS found and returned in the Superior Court on October 20, 1976.

The cases were tried before *O'Connor*, J.

*Daniel E. Callahan* for the defendant.

*Brian J. Dobie*, Special Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. On December 21, 1976, the defendant was convicted on indictments charging him with murder in the first degree and armed robbery of Patrick K. Hall. The case is here on appeal pursuant to G. L. c. 278, §§ 33A-33G. We affirm the judgments.

All three assignments of error which have been argued relate to the charge of the trial judge to the jury. The principal one focuses on the judge's failure to instruct the jury that a voluntary manslaughter verdict is warranted where excessive force is used in self-defense. However, counsel for the defendant neither requested such an instruction nor objected to its omission, nor in any way raised this issue at trial. On their face these facts appear dispositive of this appeal, since ordinarily a defendant cannot raise a question of law for the first time in a brief filed in this court. *Commonwealth* v. *Cook*, 351 Mass. 231, 237, cert. denied, 385 U.S. 981 (1966). *Commonwealth* v. *Skalberg*, 333 Mass. 255, 256 (1955). Nevertheless, we are mindful that "in appropriate instances this court has and will exercise the power to set aside a verdict or finding in order to prevent a miscarriage of justice when a decisive matter has not been raised at trial." *Commonwealth* v. *Conroy*, 333 Mass. 751, 757 (1956). We do not believe that relief under this principle is called for in this case, nor do we think that justice requires us to exercise our power under G. L. c. 278, § 33E, to set aside the verdict.

We state the evidence, most of which is derived from the defendant's own testimony at the trial.

The defendant was a twenty year old male residing on Browning Avenue, Dorchester. On the evening of September 28, 1976, he was walking to a friend's home on Annunciation Road. Upon reaching Parker Street he encountered four young men walking toward him; among them was the decedent, Patrick Hall. They asked him the location of

Ward Street, and then one of the group told the defendant that they were seeking to buy a pound of marihuana.

The defendant offered to arrange the sale for $580. One of the four responded that he only had "four something" and that he wished to see a pound. The defendant saw paper in Hall's hand that could have been money. The defendant told the group that he could take only one of them to his supplier; Hall departed with him, the others remaining on the street corner.

The defendant took Hall to the sixth floor of a building on Annunciation Road. Leaving Hall by the stairway, the defendant went to his supplier's apartment and returned to Hall with a bag containing marihuana. The defendant balked at Hall's insistence that they take the marihuana to his friends for their inspection before he paid for it. An argument ensued and then a fight started when Hall attempted to wrest the bag from the defendant. In the course of the struggle they fell down a flight of stairs to the fifth-floor landing. Hall then produced a knife with which he tried to stab the defendant. The defendant tried to escape but had no opportunity to do so. He seized the hand in which Hall was wielding the knife and turned the knife away from his own body and toward Hall's body. They both fell with the defendant landing on top of Hall. Hall received a fatal stab wound in the chest. Upon seeing the blood, the defendant panicked and fled. He denied taking any money from Hall. Outside the building, when he realized he was holding the knife, he discarded it and ran home.

We turn now to the charge. The judge gave detailed and complete instructions to the jury on the various degrees of murder as well as manslaughter. Included were instructions on felony-murder as well as deliberate premeditation as bases for murder in the first degree. He also instructed the jury, in appropriate detail, that the defendant should be acquitted if he had acted in self-defense. He gave no instruction, however, that if the defendant used excessive force in self-defense he could be convicted only of voluntary manslaughter.

"It is well established that where evidence in a murder prosecution is such that a jury could find a defendant guilty of manslaughter rather than murder it is reversible error to refuse to give such an instruction . . . . A trial judge is not required, however, to charge on an hypothesis which is not supported by evidence." *Commonwealth* v. *Caine,* 366 Mass. 366, 374 (1974), quoting from *Commonwealth* v. *Costa,* 360 Mass. 177, 184 (1971). It is argued by the defendant that, had he been the victim of an armed robbery by Hall, there would be a legitimate question as to whether Hall's death was the result of excessive force exercised by the defendant in self-defense. Assuming, arguendo, that instructions as to this premise would be permissible or even advisable, we proceed under our G. L. c. 278, § 33E, powers to examine the entire record, including the verdicts returned by the jury, to determine whether there is any practical possibility that a miscarriage of justice has occurred.

As the record makes clear, the entire case was tried and turned on the question whether it was the victim or the defendant who attempted to rob the other. Fairly read in its entirety, the judge's charge permitted the jury to return guilty verdicts if they found the defendant was the robber, or not guilty verdicts if they found him to be a victim who defended himself against an armed attack. The crucial evidence was the defendant's testimony in which he attempted to characterize Hall as the knife-wielding attacker who tried to steal the marihuana from the defendant. It is clear from the guilty verdicts returned as to both the armed robbery and murder indictments that the jury chose not to believe this version of the incident and instead found that it was the defendant who attacked and killed Hall with the knife for the purpose of stealing Hall's money.

The verdicts of the jury were mutually consistent, and show that they understood and properly applied the judge's instructions.

Because the jury's verdicts necessarily characterize the defendant as the robber, the privilege of self-defense was not applicable since there was no evidence that he withdrew in

good faith and announced his intention to retire from the conflict. "[I]t has been held that the right to claim self-defense may be forfeited by one who commits an armed robbery, even if excessive force is used by the intended victim . . . ." *Commonwealth* v. *Maguire,* 375 Mass. 768, 773 (1978). See *Gray* v. *State,* 463 P.2d 897, 909 (Alas. 1970); *People* v. *Dillard,* 5 Ill. App. 3d 896, 900 (1972).

The possibility exists that had the judge given instructions on excessive use of force in self-defense, the jury could have ignored the foregoing principles and returned verdicts which were legally inconsistent (i.e., guilty of armed robbery but not guilty of murder by reason of killing by excessive use of force in self-defense). We have in some cases affirmed judgments of guilt even where the verdicts were mutually inconsistent. See *Commonwealth* v. *Scott,* 355 Mass. 471, 475 (1969); *Commonwealth* v. *McCarthy,* 348 Mass. 7, 14 (1964). However, the possibility that the jury, in contradiction of their duties under their oaths, might have disregarded the instructions is not, in our view, a factor to be considered as we examine the case for a possibility of a miscarriage of justice.

The defendant also alleges as error the failure of the judge to instruct the jury on larceny as a lesser included offense to the armed robbery charge. "The judge is not obliged to charge a jury concerning a lesser included offence if the evidence would not warrant a finding that the defendant was guilty of that offence." *Commonwealth* v. *McKay,* 363 Mass. 220, 228 (1973). In this case there was no error in the charge because the evidence did not warrant a finding of larceny as opposed to armed robbery.

Larceny is the unlawful taking and carrying away of the personal property of another with the specific intent to deprive the person of the property permanently. G. L. c. 266, § 30. See G. L. c. 277, § 39. Robbery includes all the elements of larceny and in addition requires that force and violence be used against the victim or that the victim be put in fear. *Commonwealth* v. *Novicki,* 324 Mass. 461, 464-465 (1949). The jury clearly found that the defendant

used the knife to take money from the victim by force. No evidence was offered to the effect that the killing occurred first and then the defendant decided to remove the money from the victim's body. Therefore, there was no basis for a verdict of larceny and thus no necessity for a charge on that offense. See *Commonwealth* v. *Santo*, 375 Mass. 299, 307 (1978).

Finally, the defendant argues that the judge committed reversible error in giving the following instruction to the jury. "Should I be in error, counsel are well aware, and you should be too, that we have appellate courts whose function it is to review and to correct any harmful errors made by the trial judge; so no injustice will be done if you apply the law as I state it."

We have cautioned in the past against unnecessary mention of the appellate process to the jury. See *Commonwealth* v. *Allen*, 377 Mass. 674, 680-681 (1979). However, the instruction in this case does not amount to reversible error because it did not have the "inescapable effect of reducing the jurors' appreciation of the significance of their deliberations and verdict." *Commonwealth* v. *Walker*, 370 Mass. 548, 574, cert. denied, 429 U.S. 943 (1976). The judge did not imply that an appellate court would sit to correct errors of the jury in the performance of their fact-finding function. He merely instructed the jury that they should apply the law as he stated it without worrying about whether his statements were correct. However ill-advised this effort may have been, it did not significantly prejudice the defendant.

In summary, we emphasize once more that our consideration of this case, in which no issue as to the judge's instructions was raised at the trial, involved a review of the entire record as considered in light of the verdicts returned by the jury to determine whether a miscarriage of justice has occurred. By that standard as applied under G. L. c. 278, § 33E, we find no reason to disturb the verdicts.

*Judgments affirmed.*